1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARCUS R. ELLINGTON,

11              Plaintiff,                  No. CIV S-04-0666 DFL KJM P

12        vs.

13   E. S. ALAMEIDA, et al.,

14              Defendants.                 FINDINGS & RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17   42 U.S.C. § 1983.  Plaintiff has "struck out" within the meaning of the Prisoner Litigation

18   Reform Act (PLRA), 28 U.S.C. § 1915(g) .  Nevertheless, this court found portions of his

19   amended complaint satisfied the "imminent danger" exception to the three strikes provisions of

20   the PLRA, recognizing that those portions "state a cognizable claim for relief under 42 U.S.C.

21   § 1983 and 28 U.S.C. § 1915A(b)" and directed service on defendants Rohlfing, Salenger and

22   Exum for alleged acts or omissions relating to plaintiff's medical care. 5/18/2005 Order.

23   /////

24   /////

25   /////

26   /////

1

1   Defendants Rohlfing and Salenger[1] have filed a motion for summary judgment

2   and plaintiff has filed a cross-motion for partial summary judgment.

3   I.  Standards For Summary Judgment

4   Summary judgment is appropriate when it is demonstrated that there exists "no

5   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6   matter of law."  Fed. R. Civ. P. 56(c).

7   Under summary judgment practice, the moving party

8   always bears the initial responsibility of informing the district
    court of the basis for its motion, and identifying those portions of
9   "the pleadings, depositions, answers to interrogatories, and
    admissions on file, together with the affidavits, if any," which it
10  believes demonstrate the absence of a genuine issue of material
    fact.

11

12  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

13  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

14  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

15  answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be

16  entered, after adequate time for discovery and upon motion, against a party who fails to make a

17  showing sufficient to establish the existence of an element essential to that party's case, and on

18  which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of

19  proof concerning an essential element of the nonmoving party's case necessarily renders all

20  other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

21  long as whatever is before the district court demonstrates that the standard for entry of summary

22  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

23  If the moving party meets its initial responsibility, the burden then shifts to the

24  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

25  _____

    [1] Defendant Exum was served later than these defendants.  His motion for summary
26  judgment, filed December 7, 2006, will be addressed in a separate set of findings and
    recommendations.

1  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

2  establish the existence of this factual dispute, the opposing party may not rely upon the

3  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

4  form of affidavits, and/or admissible discovery material, in support of its contention that the

5  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

6  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

7  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

8  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

9  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

11  1436 (9th Cir. 1987).

12         In the endeavor to establish the existence of a factual dispute, the opposing party

13  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

14  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

15  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

16  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

17  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

18  committee's note on 1963 amendments).

19         In resolving the summary judgment motion, the court examines the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

21  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

22  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

23  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

24  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

25  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

26  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

2    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

3    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

4    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

5           On December 12, 2005, the court advised plaintiff of the requirements for

6    opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

7    Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999);

8    Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

9    II.  Facts

10          A.  Defendant Rohlfing

11          During his confinement in the California Department of Corrections and

12   Rehabilitation, plaintiff has reported that his back problems render it very painful, if not

13   impossible, for him to walk.  Amended Complaint (Am. Compl.), Attached Declaration of

14   Marcus Ellington (Ellington Decl.) ¶ 6; Plaintiff's Motion for Summary Judgment (PMSJ),

15   Declaration of Marcus Ellington (Ellington Decl. II) ¶ 9.  Many of plaintiff's MRIs and X-rays

16   have revealed a normal lumbar spine.  Defendants' Motion for Summary Judgment (DMSJ), Ex.

17   A, Declaration of Jeffrey Rohlfing, M.D. (Rohlfing Decl.) ¶¶ 42-44, Attachments 9 at 118-122 &

18   10 at 124-127.

19          On December 31, 1997, Dr. Harway prepared a disability verification form for

20   plaintiff and checked the box designating plaintiff as "permanently mobility impaired."  Ellington

21   Decl. ¶ 4 & Ex. C.[2]  The notes on the form indicate that plaintiff's treatment plan was geared

22   _____

23          [2]  Plaintiff has supported his motion for summary judgment with a declaration similar to
     the one attached to his complaint.  The summary judgment declaration relies on medical records
24   as exhibits.  Because these exhibits were not attached to the declaration, it is not competent
     evidence in support of his motion for summary judgment or in opposition to defendants' motion.
25   Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th Cir. 1978); Fed. R. Civ. P. 56(e)
     ("sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be
     attached thereto or served therewith" ).  However, the court may and does consider the
26   declaration submitted with the amended complaint, which is properly supported by documentary

                                              4

1  toward "independent living within 6 weeks" and authorized plaintiff to use a walker.  Id., Ex. C.

2  An MRI conducted on May 15, 1998, when plaintiff was housed at Corcoran State Prison, noted

3  a "small central lumbar disc herniation, which does not significantly impinge upon the thecal sac

4  [an enclosed sac in which nerve roots hang]."  Id. ¶ 1 & Ex. D.[3]

5          Dr. Harway, who is the orthopedist at Salinas Valley State Prison, evaluated

6  plaintiff once again on January 2, 1998 and diagnosed plaintiff as suffering from "subjective

7  back pain without any confirmatory physical finding."  Rohlfing Decl. ¶ 46, Attach. 12 at 138-

8  140.

9          On September 27, 1999, doctors at High Desert State Prison (HDSP) filled out

10  another disability verification form, which listed plaintiff as "permanently mobility impaired"

11  and assigned him a wheelchair and walker.  Ellington Decl. ¶ 5 & Ex. F. The chrono approving

12  an eggcrate mattress and the wheelchair was annotated, "expires 8/1/00 at which time

13  reevaluation is needed."  Id., Ex. F.

14          On October 6, 2000, while plaintiff was housed at California Medical Facility

15  (CMF), Dr. Capozzoli ordered an MRI of plaintiff's spine.  The radiologist reported:

16          At L5-S1 there is a mild, broadly-based disk bulge noted seen to
            extend into the neural foramina bilaterally.  There may be some
17          contact with the nerve roots bilaterally but definite displacement is
            not identified.
18
19          CONCLUSION:   Mild degenerative disk disease with disk
            bulging.  This is particularly noted laterally at the L5-S1 level.
20          Contact with nerve roots is noted at this level, left greater than
            right.  The study is otherwise unremarkable.

21  Id. ¶ 2 & Ex. E; Ellington Decl. II ¶ 8.

22  /////

23  _____

24  evidence, and those portions of the summary judgment declaration that do not rely on medical
    records.

25      [3] The medical records plaintiff relies on in his affidavit are not authenticated, but
    defendants have not objected to them. See Fonseca v. Sysco Food Services of Arizona, 374 F.3d
26  840, 846 (9th Cir. 2004).

1         On May 21, 2001, plaintiff was sent for a rheumatology consultation with Dr.

2  Anderson at CMF, who recommended weaning plaintiff from the wheelchair and administering

3  morphine.  Rohlfing Decl. ¶ 19, Attach. 1 at 1-4.  However, when plaintiff returned to HDSP in

4  June 2001, he was still in his wheelchair.  Id. ¶ 20.

5         Sometime after plaintiff's return from CMF, his chronos for dark glasses and ice

6  packs for his migraine headaches, orthopedic shoes and support stockings for edema, egg crate

7  mattress for osteoarthritis, cervical pillow for head and neck pain, wedge pillow and back brace

8  for his spinal problems, and cotton blankets for his wool allergy were all discontinued by

9  defendant Rohlfing.  Am. Compl. ¶ 36; Ellington Decl. ¶¶ 15-21 & Ex. G; Ellington Decl. II

10  ¶ 11.  All of these chronos except one for support stockings were of limited duration, from four

11  months to one year.  Ellington Decl., Ex. G.

12         Even after plaintiff's return from the institution, Rohlfing authorized chronos for

13  support stockings, an egg crate mattress, and cotton blankets.  Rohlfing Decl. ¶ 26.[4]  Rohlfing

14  did not discontinue chronos for the back brace, wedge pillows or orthopedic shoes.  Id. ¶ 24.

15  Moreover, plaintiff would not submit to an examination, which was a prerequisite to the renewal

16  of the chronos.  Id. ¶¶ 24-26.  Plaintiff claims that Rohlfing in fact discontinued these chronos

17  personally and refers to exhibit F attached to the complaint as support for this claim.  Ellington

18  Decl. II ¶ 20.  That exhibit, however, contains only one medical chrono signed by defendant

19  Rohlfing, which calls for a lower tier, lower bunk placement for plaintiff.  Am. Compl., Ex. F

20  (chrono dated 9/19/01).

21         On August 17, 2001, plaintiff had an appointment with Drs. Rohlfing and Baron,

22  but refused to be evaluated.  Rohlfing Decl. ¶ 31 & Attach. 2 at 7.

23  /////

24

25      [4]  Rohlfing believes that ice packs and dark glasses are no longer the treatment of choice

26  for migraine headaches.  Rohlfing Decl. ¶¶ 25, 27.

1      Plaintiff returned to Dr. Rohlfing on September 24, 2001, who noted that
2  plaintiff's body language did not suggest the level of pain that plaintiff reported.  In Dr.
3  Rohlfing's opinion, plaintiff can walk, but chooses not to do so, which may be contributing to
4  plaintiff's high blood pressure.  Id., Attach. 2 at 8.

5      On January 17, 2002, plaintiff asked Dr. Rohlfing for morphine, ice and a cervical
6  pillow to combat his migraines.  Id., Attach. 2 at 11.  Once again, Rohlfing observed plaintiff to
7  be "in no pain at all when I see him and very serene," and once again, plaintiff refused to allow
8  defendant Rohlfing to examine him.  Id.

9      On July 24, 2002, plaintiff was admitted to the Correctional Treatment Center
10 (CTC) at HDSP, a place where inmates undergo in-house evaluations, as a result of suicidal
11 thoughts.  Id. ¶¶ 15, 36 & Attach. 3 at 25.

12     A Physician's Order from Dr. M.L. Watson for July 5, 2002 includes "DC
13 wheelchair."  Id. ¶ 21 & Attach. 3 at 19.  Accordingly, Dr. Rohlfing asserts that he did not give
14 the order to remove plaintiff's wheelchair.  Id. ¶ 21.  He does acknowledge that he examined
15 plaintiff at Dr. Watson's request on July 25, 2002 and after the examination concurred in Dr.
16 Watson's determination to discontinue the wheelchair although he thought a walker would be
17 helpful.  Id. ¶ 15 & Attach. 3 at 21.  He could not find "any significant back or leg problem
18 which would stop this patient from walking . . . ."  Id.

19     Plaintiff claims, however, that Rohlfing has never physically examined plaintiff
20 and "defendant's [sic] have no conclusive proof that rohlfing has examined plaintiff."  Ellington
21 Decl. II ¶ 6.

22     On August 5, 2002, Dr. Rohlfing again examined plaintiff and concluded that the
23 physical findings were inconsistent with plaintiff's description of his level of pain.  Rohlfing
24 Decl., Attach. 3 at 25.  Plaintiff was able to walk with a walker, but complained of fatigue and
25 back pain.  Id.  Plaintiff refused an MRI and informed Rohlfing that an earlier MRI showed a
26 back problem.  Id., Attach. 8 at 102.

7

1       On August 6, 2002, Dr. Baron discontinued the chrono for plaintiff's wheelchair.

2   Id. ¶ 38 & Attach. 5 at 66.

3       On August 7, 2002, Drs. Watson, Rohlfing, Crawford and Essien met and

4   confirmed the decision to remove plaintiff's wheelchair and give him a walker.  Id., Attach. 3 at

5   23.

6       On September 11, 2002, Rohlfing observed plaintiff walking without difficulty in

7   his cell.  Id. ¶ 35 & Attach. 2 at 13.

8       Based on his review of plaintiff's medical records, Dr. Rohlfing cannot find a

9   single test that supports plaintiff's claim that he suffers from a legitimate physical disability apart

10  from high blood pressure.  Id. ¶ 40 & Attach. 5 at 48-68.  In fact, a nerve velocity test from 1996

11  does not show the type of nerve damage that would be present in one claiming the limitations

12  described by plaintiff.  Id. ¶ 44 & Attach. 10 at 124-126.  In Dr. Rohlfing's opinion, providing

13  plaintiff with a wheelchair he does not need would be inappropriate medical care.  Id. ¶ 17.[5]

14      B.  Doctor Salenger

15      In the amended complaint, plaintiff alleges that defendant Salenger, the chief

16  psychiatrist at HDSP, cut off the Thorazine prescribed for him on December 9, 2003, even

17  though Salenger had not seen or spoken with plaintiff.  Am. Compl. at 38 & Exs. F & G.   In his

18  declaration, plaintiff alleges that he suffers from depression with psychotic features and without

19  medication hears voices that urge him to harm himself.  Ellington Decl. ¶¶10-13 & Ex. H.

20      Dr. F. Fowler, a psychiatrist at CMF, has reviewed plaintiff's medical records,

21  which reveal that on December 8, 2003, plaintiff was started on a minimal dose of Thorazine

22  after reporting auditory hallucinations, although the prescribing doctor did not believe plaintiff

23  had a serious mental illness.  DMSJ, Ex. B, Declaration of F. Fowler (Fowler Decl.) ¶¶ 6, 7 &

24

---

25      [5] Dr. Rohlfing's declaration refers to a report from outside orthopedist Gary Starr.
    Rohlfing Decl. ¶ 16.  Because this report is not attached, the court does not consider those
26  portions of the declaration that reference it.  Cermetek, Inc., 573 F.2d at 1377.

Attach. 2. Thorazine was available to plaintiff over the following fourteen days, but he refused the medication or did not show up to take the drug for ten out of the fourteen days. Id. ¶ 8 & Attach. 4. On December 24, 2003, Dr. Salenger gave a verbal order to stop the medication because of plaintiff's non-compliance. Id. ¶ 9 & Attach. 6. When plaintiff was evaluated on January 6, 2004, the doctor found that plaintiff was stable without the medication. Id. ¶ 10 & Attach. 7. In Dr. Fowler's opinion, Dr. Salenger acted appropriately in discontinuing plaintiff's Thorazine because of plaintiff's refusal to take it. Id. ¶ 14.[6]

Plaintiff does not address Dr. Fowler's assertion in either of his declarations; instead, in his unsworn statement of undisputed facts, he claims that he did not take the Thorazine because he could not get to the clinic without a wheelchair or walker and suggests that Dr. Salenger should have inquired when plaintiff failed to report for his medication. Pl.'s Statement of Undisputed Facts (PSUF) ¶ 30. He claims that Exhibit A to the Amended Complaint supports this statement; although that exhibit consists of grievances and the responses to grievances about his psychiatric medications, it says nothing about the reasons plaintiff refused to take the prescribed Thorazine.

III. Analysis

    A. The Eighth Amendment And Medical Care

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs."

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton

---

[6] Dr. Fowler mentions an examination of plaintiff by Dr. Al French. Fowler Decl. ¶ 13. Because it is not attached to the declaration, the court does not consider Dr. Fowler's discussion of it. Cermetek, Inc., 573 F.2d at 1377.

9

1   infliction of pain." Second, the plaintiff must show the defendant's
2   response to the need was deliberately indifferent.  This second
    prong-defendant's response to the need was deliberately
3   indifferent-is satisfied by showing (a) a purposeful act or failure to
    respond to a prisoner's pain or possible medical need and (b) harm
4   caused by the indifference. Indifference may appear when prison
    officials deny, delay or intentionally interfere with medical
5   treatment, or it may be shown by the way in which prison
    physicians provide medical care.

6   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see

7   also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other

8   grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

9           A showing of merely inadvertent or even negligent medical care is not enough to

10  establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124,

11  1130 (9th Cir. 1998).  A difference of opinion about the proper course of treatment is not

12  deliberate indifference nor does a dispute between a prisoner and prison officials over the

13  necessity for or extent of medical treatment amount to a constitutional violation. See, e.g.,

14  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th

15  Cir. 1989).

16          A medical need is serious if failure to treat the condition could cause further

17  significant injury or the unnecessary and wanton infliction of pain.  McGuckin, 974 F.2d at

18  1059.     The existence of an injury that a reasonable doctor or patient would find
              important and worthy of comment or treatment; the presence of a medical
19            condition that significantly affects an individual's daily activities; or the
              existence of chronic and substantial pain are examples of indications that a
20            prisoner has a "serious" need for medical treatment

21  Id. at 1059-60.

22          Both back problems and depression are serious medical needs, if the diagnoses

23  are not rendered solely by the inmate plaintiff.  Cameron v. Sarraf, 128 F.Supp.2d 906, 911 (E.D.

24  Va. 2000) (degenerative disc disease and resulting pain), aff'd, 232 F.3d 886 (4th Cir. 2000);

25  White v. Crow Ghost, 456 F.Supp.2d 1096, 1002 (D.N.D. 2006) (depression).

26  /////

1    1.  Defendant Rohlfing

2         The court ordered the complaint served on Dr. Rohlfing based on plaintiff's

3    contentions that this defendant was the person who ordered that his wheelchair be removed and

4    refused to renew chronos for ice, dark glasses, orthopedic shoes and support stockings, cervical

5    and wedge pillows, an eggcrate mattress and cotton blankets.

6         A.  Wheelchair[7]

7         Dr. Rohlfing has presented evidence showing that Dr. Watson signed the order

8    removing plaintiff's wheelchair.  Rohlfing Decl. ¶ 21 & Attach. 3 at 19.  Plaintiff has presented

9    nothing but the bald statement that defendant Rohlfing removed the wheelchair, but has not

10   explained how he learned of the order, and there is no claim that he was seen by or had an

11   appointment with Dr. Rohlfing on July 24, 2002.  Moreover, plaintiff  has not attempted to

12   address the order from Dr. Watson, except to allege that Dr. Watson made the order at Dr.

13   Rohlfing's behest.  Ellington Decl. II ¶¶ 5, 12; PSUF ¶ 28.  These conclusory statements, not

14   supported by evidence, do not create an issue of material fact sufficient to defeat summary

15   judgment and do not provide a basis upon which summary judgment in plaintiff's favor may be

16   based.  F.T.C. v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).

17        Later in his declaration, plaintiff takes a different approach and claims that

18   defendant Rohlfing recommended discontinuation of the wheelchair in his consultation reports of

19   July 25 and July 26, 2002; he does not clearly indicate which portions of attachment 3 to

20   Rohlfing's declaration contain these recommendations.  Ellington Decl. II ¶ 13.  Moreover, he

21   also relies on an exhibit E, which was not attached to his motion for summary judgment.  Id.

22   ¶ 14.  Plaintiff cannot defeat summary judgment by relying on portions of the record not clearly

23   /////

24   /////

25   

26        [7]  The parties also address Dr. Rohlfing's decision to remove plaintiff's walker.  These
     allegations were not part of the complaint.

11

1  identified, or on documents he has not provided to the court.  <u>Carmen v. San Francisco Unified</u>

2  <u>School District</u>, 237 F.3d 1026, 1029-30 (9th Cir. 2001).  There is no genuine issue of material

3  fact as to this claim.

4         Even if the complaint is construed as alleging that it was Rohlfing's concurrence

5  in the decision to remove the wheelchair, summary judgment is appropriate.

6         In <u>Walker v. Peters</u>, 233 F.3d 494 (7th Cir. 2000), the inmate, and later his

7  widow, alleged that prison doctors were deliberately indifferent because they refused to

8  prescribe AZT and Bactrim as treatment for AIDS.  The record showed that prison doctors

9  assumed the inmate had AIDS because he was a hemophiliac and had received Factor VIII, a

10  blood product, on numerous occasions and because he had many symptoms of the disease.

11  Nevertheless, they refused to prescribe AZT because the inmate refused to submit to a

12  confirmatory blood test.  The Seventh Circuit found no Eighth Amendment violation:

13              [R]equiring an HIV test before dispensing a dangerous drug used
                to treat HIV positive persons and persons with AIDS is so clearly
14              within the realm of reasonable conduct by the prison that no
                reasonable jury could find that the prison was deliberately
15              indifferent to Walker's serious medical needs for requiring that
                test, even though he had many of the symptoms of the disease. . . .
16              [T]here is no evidence tending to suggest that Walker's symptoms
                were consistent only with AIDS or HIV infection, and there is no
17              evidence that the prison was ignoring Walker's needs.  Rather,
                they required him to take a test confirming what they suspected to
18              be the case before they would begin treatment.

19  <u>Id</u>. at 500.  In this case, plaintiff does not dispute Rohlfing's assertion that he refused to be

20  examined on many occasions; in fact, he has affirmatively claimed that Rohlfing acted without

21  examining him.  Ellington Decl. II ¶ 6.  As in <u>Walker</u>, Rohlfing's concurrence in the

22  determination to remove plaintiff's wheelchair was based on his determination that plaintiff's

23  reliance on the wheelchair was inappropriate without further confirmatory tests.  Rohlfing Decl.

24  ¶¶ 14, 17.[8]

25  ─────────────────────

26       [8]  In light of this determination, the disputed issue as to whether Rohlfing ever examined
         plaintiff is not material.

                                           12

1    Moreover, plaintiff does not claim that Rohlfing acted without ever seeing him or

2  gaining what intelligence he could from observing plaintiff and plaintiff's medical records.  In

3  this case, Rohlfing relied on extensive medical records, which suggested that:  plaintiff's claims

4  of pain and inability to walk were not supported by the numerous tests conducted on plaintiff,

5  even by the MRI upon which plaintiff relies so heavily; by his own observations of plaintiff's

6  body language, which did not suggest the level of pain plaintiff claimed; and by his own and

7  others' observations of plaintiff standing and walking.  Id. ¶¶ 14, 15, 32 & Attachs. 2, 10, 11.

8    In Cameron v. Sarraf, 128 F.Supp.2d 906 (2000), the plaintiff alleged that doctors

9  were deliberately indifferent to his degenerative disc disease by adopting a "watch and wait"

10  course of treatment, which left plaintiff in pain.  The court rejected the claim, noting that the

11  disagreement between plaintiff and his doctor over the course of treatment did not state an Eighth

12  Amendment violation.  Id. at 912.  Moreover, in Sanchez v. Vild, supra, the Court of Appeal

13  recognized that a difference of medical opinion regarding the optimum medical treatment does

14  not state an Eighth Amendment claim.  That plaintiff disagreed with Rohlfing's determination

15  and that other doctors within CDCR thought a different course of treatment to be appropriate does

16  not translate into a determination that Rohlfing violated plaintiff's Eighth Amendment rights if

17  and when he concurred in a determination to remove plaintiff's wheelchair, a determination based

18  on his training, his observations, and his comprehensive review of the records.

19    Plaintiff's claimed pain may be real, whether or not it is physically based.  Yet

20  plaintiff's disagreement over the way to manage the pain, whether by compelling him to walk or

21  giving him a wheelchair, does not rise to the level of an Eighth Amendment violation.  Veloz v.

22  New York, 339 F.Supp.2d 505, 525 (S.D.N.Y. 2004), aff'd, 178 Fed. Appx. 39 (2d Cir. 2006).

23    B.  Other Medical Appliances And Devices

24    Plaintiff's evidence shows that the chronos for these items were generally for

25  limited durations, ranging from four months to one year.  Ellington Decl., Ex. G.  The chrono for

26  support stockings issued at CMF indicates that its duration is "indef," but a later chrono, issued at

1   HDSP, in 2001, shows the duration of the chrono to be one year.  Compare id. and Rohfling Decl.

2   ¶ 38, Attach. 5 at 55.  However, plaintiff does not dispute Rohlfing's claim that he refused to be

3   examined before they would be renewed.  Accordingly, whether or not Rohlfing personally

4   refused to renew some of these chronos, there was no Eighth Amendment violation in light of

5   plaintiff's refusal to be examined.  Walker v. Peters, 233 F.3d at 500.

6          2.  Dr. Salenger

7          Plaintiff does not dispute defendant's showing that he declined to take the

8   prescribed Thorazine for ten out of fourteen days and that it was discontinued largely for that

9   reason.  Fowler Decl. ¶¶ 8-9 & Attach. 6.  He suggests, however, that Dr. Salenger should have

10  made some attempt to determine why he did not report to the clinic for his medication.  There is

11  no Eighth Amendment violation in discontinuing a treatment that an inmate refuses.  Jones v.

12  Smith, 784 F.2d 149, 151-52 (2d Cir. 1986).  Plaintiff has presented nothing suggesting he was

13  unable to get a message to Dr. Salenger explaining why he had not taken the medication, or any

14  suggestion he explained his reasons for his refusal during the follow-up interview with Dr. Exum.

15  Summary judgment is appropriate for Dr. Salenger.

16     B.  ADA Claims

17         Plaintiff asserts that the defendants' actions violated the Americans With

18  Disabilities Act (ADA) and that defendant Rohlfing's determination to discontinue plaintiff's

19  wheelchair was made in retaliation for plaintiff's complaint to Senator Feinstein.  See, e.g., PSUF

20  ¶¶ 15, 17, 23.  Defendants argue correctly that the court's screening order was limited to

21  plaintiff's claims of Eighth Amendment violations.  Opp'n at 3.  Defendants are correct.

22         In the screening order, the court ordered the complaint served on defendant

23  Rohlfing for actions alleged in paragraphs 15-17 and 36, and on defendant Salenger for actions

24  described in paragraph 38G.  These sections are under headings of "impermissible medical

25  treatment" and "proscribed medical care," without reference to the ADA.  See Am. Compl. at 4-6.

26  The court's determination was based on the recognition that an action under the ADA does not lie

14

1  for medical treatment decisions, which formed the basis of plaintiff's complaint.  Burger v.

2  Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005); Fitzgerald v. Corrections Corp. of America, 403

3  F.3d 1134, 1144 (10th Cir. 2005);  Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).   In

4  addition, plaintiff's conclusory claims that he was retaliated against for complaining about ADA

5  problems did not satisfy the elements for such a claim.  Cf. Weixel v. Board of Education, 287

6  F.3d 138, 148 (2d Cir. 2002).   Accordingly, plaintiff's ADA claims are not part of this case.

7  IV.  Plaintiff's November 22, 2006 Request For Injunctive Relief

8          Plaintiff seeks a transfer from High Desert State Prison because certain officers,

9  who are not defendants to this action, allegedly sought to give him a cell mate who would harm

10 plaintiff.  This court is unable to issue an order against individuals who are not parties to a suit

11 pending before it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).

12          IT IS HEREBY RECOMMENDED that:

13          1.  Plaintiff's motion for partial summary judgment be denied;

14          2.  The motion for summary judgment filed by defendants Rohlfing and Salenger

15 be granted; and

16          3.  Plaintiff's November 22, 2006 motion for injunctive relief be denied.

17          These findings and recommendations are submitted to the United States District

18 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

19 days after being served with these findings and recommendations, any party may file written

20 objections with the court and serve a copy on all parties.  Such a document should be captioned

21 /////

22 /////

23 /////

24 /////

25 /////

26 /////

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within ten days after service of the objections.  The parties are advised

3  that failure to file objections within the specified time may waive the right to appeal the District

4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5  DATED:  January 23, 2007.

6  _____

7  U.S. MAGISTRATE JUDGE

8

9

10

11

12

13  2/elli0666.57

14

15

16

17

18

19

20

21

22

23

24

25

26