IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCUS R. ELLINGTON,

    Plaintiff,           No. CIV S-04-0666 RRB KJM P

    vs.

E.S. ALAMEIDA, et al.,

    Defendants.           FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Defendant Exum has filed a motion and plaintiff a cross-motion for summary judgment. In addition, in light of Andrews v. Cervantes, ___ F.3d ___ (9th Cir. 2007), the court must reevaluate plaintiff's original and amended complaints.

I. Procedural History

        On April 2, 2004, this case was transferred from the Northern District. On November 19, 2004, this court found that plaintiff had struck out within the meaning of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), and directed plaintiff to file an amended complaint containing only claims involving an alleged imminent danger, which would allow plaintiff to avoid the three strikes bar.

/////

Plaintiff's amended complaint was filed on December 13, 2004. On May 18, 2005, the court found service appropriate for defendants Salenger, Rohlfing and Exum, to the extent that defendant Exum was alleged to have acted as set forth in paragraph 14 of the amended complaint. That paragraph and those preceding it, describe the events of July 24, 2002. Plaintiff alleges that on that date he was placed in administrative segregation in a cell that was not wheelchair accessible; that the guards taunted him about his wheelchair; that he attempted to hang himself; that defendant Exum had decreased his medication, making it impossible for him to get a full night's sleep; that he had not received his medication that day and that circumstance, coupled with the taunts, made him suicidal; that plaintiff told defendant Exum that he could function when taking Thorazine; that defendant Exum told him that the institution no longer prescribed Thorazine because of the side effects; defendant Exum also declined to prescribe Seroquel for plaintiff; but that defendant Exum did admit him to the Correctional Treatment Center (CTC) for suicide watch. Amended Complaint (Am. Compl.) ¶¶ 7-14.

On January 24, 2007, this court filed findings and recommendations recommending that the summary judgment motion filed by defendants Rohlfing and Salenger be granted and that plaintiff's motion for partial summary judgment be denied. The district court adopted these findings and recommendations on March 30, 2007.

Defendant Exum filed his motion for summary judgment on December 7, 2006; plaintiff filed a cross-motion for summary judgment on February 12, 2007.

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

/////

1           Under summary judgment practice, the moving party
2 always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the
3 pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes
4 demonstrate the absence of a genuine issue of material fact.

5 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

6 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

7 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

8 to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

9 after adequate time for discovery and upon motion, against a party who fails to make a showing

10 sufficient to establish the existence of an element essential to that party's case, and on which that

11 party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

12 concerning an essential element of the nonmoving party's case necessarily renders all other facts

13 immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

14 whatever is before the district court demonstrates that the standard for entry of summary

15 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

16           If the moving party meets its initial responsibility, the burden then shifts to the

17 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

18 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

19 establish the existence of this factual dispute, the opposing party may not rely upon the

20 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

21 form of affidavits, and/or admissible discovery material, in support of its contention that the

22 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

23 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

24 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

25 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

26 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
2  1436 (9th Cir. 1987).

3  In the endeavor to establish the existence of a factual dispute, the opposing party
4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
6  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
8  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
9  committee's note on 1963 amendments).

10 In resolving the summary judgment motion, the court examines the pleadings,
11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
12 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
13 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
14 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
15 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
16 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
17 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
18 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
19 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
21 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

22 On December 12, 2005, the court advised plaintiff of the requirements for
23 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.
24 Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999);
25 Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).
26 /////

III. <u>Facts</u>[1]

In May 2002, plaintiff was admitted to the Mental Health Crisis Bed (MHCB) at High Desert State Prison after he reported feeling suicidal. Defendant's Supplemental Statement Of Undisputed Facts (DSSUF), Ex. D, Declaration of Dr. J.D. Cummings (Cummings Decl.) ¶ 4 (indicating admission on May 15, 2002) & Declaration of Deborah Christie (Christie Decl.), Attach. 1 (records documenting admission on May 9, 2002). According to plaintiff's medical records, plaintiff said that he "just reported on the yard to be suicidal as to get out of his cell." Christie Decl., Attach. 1. On admission, plaintiff had been taking Seroquel[2] and Remeron; Dr. Essien continued both on plaintiff's discharge. Cummings Decl. ¶ 3; Christie Decl., Attach. 1. Plaintiff's diagnosis on discharge was adjustment and personality disorders, with depression. Christie Decl., Attachs. 1, 2 & 7.

On June 18, 2002, defendant Exum reduced plaintiff's prescribed Seroquel and Remeron doses. Cummings Decl. ¶ 4; Christie Decl., Attach. 8. On July 19, 2002, defendant Exum reduced both drugs to minimum dosages. Cummings Decl. ¶ 5; Christie Decl., Attach. 9;

---

[1] In his motion for summary judgment, defendant Exum addresses his 2004 agreement that plaintiff's prescription for Thorazine should be discontinued; plaintiff discusses the 2004 incident in his opposition, but also addresses the July 24, 2002 incident. In his reply to plaintiff's opposition and supplemental statement of undisputed facts and exhibits, defendant Exum addresses the incident of July 24, 2002. Because the court did not direct service as to the 2004 Thorazine claim, the court will not address that incident in resolving the motion for summary judgment.

In his opposition, plaintiff attempts to resuscitate his claims against defendant Rohlfing, which were rejected in the findings and recommendations of January 24, 2007, which were in turn adopted by the district court on March 30, 2007.

In addition, plaintiff suggests that he had a mental impairment within the meaning of the ADA. Opp'n at 16. (All page references to the opposition itself are to the numbers assigned by CM/ECF.) However, as noted in the findings and recommendations of January 24, 2007, the court did not direct service on the ADA claims because plaintiff is challenging medical treatment decisions, which do not raise an ADA claim. <u>Burger v. Bloomberg</u>, 418 F.3d 882, 883 (8th Cir. 2005). The court will not consider these claims.

[2] In his declaration, Dr. Cummings spells this medication "seroguel." It is spelled "seroquel" in the medical records.

Plaintiff's Opposition and Cross-Motion For Summary Judgment (Opp'n), Ex. A at 20 (7/19/02 Physician's Orders).[3]

On July 24, 2002, plaintiff was again admitted to MHCB because of a "suicide gesture w/sheet." Cummings Decl. ¶ 6; Christie Decl. Attach. 3; Opp'n, Ex. A at 21 (7/24/02 Physician's Orders).[4] Defendant Exum reports that plaintiff "had a sheet tied to something in cell and was spotted leaning forward [with] material around his neck," and that he felt that "custody officers out to get him, not on enough Seroquel, hears command voices, will kill himself if he gets a chance . . . ." Opp'n, Ex. A at 23 (Emergency Room Admission).

In the amended complaint, which is signed under the penalty of perjury, plaintiff avers that he was not given his Seroquel on July 24 and that the reduced dosage that had been prescribed was not working for him. He notified Exum of this on July 24, after he had been admitted to the Central Treatment Center following a suicide attempt. Am. Compl. ¶¶ 10-12.[5] In

---

[3] Plaintiff's exhibits generally consist of a number of unpaginated documents. For ease of reference, the court will refer to them by the header pages assigned to them by the CM/ECF system and by the title of the document.

[4] Dr. Cummings reports that, once again, plaintiff said his actions were merely a ploy to get him out of his cell. This is not reflected in the medical records submitted by defendant or plaintiff. Cummings again references a different date - July 26, 2002 - and does not disclose how he learned of this purported statement. The court will disregard it.

[5] In his declaration, Dr. Cummings says that nothing in plaintiff's Unit Health Record shows that he missed any medication during that time, but plaintiff's complete records are not attached to the declaration of Deborah Christie, the custodian of the medical records. Cummings Decl. ¶ 8; Christie Decl. ¶¶ 5-6. Rule 56(e) provides in part that "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Without the complete medication record from the time period upon which Dr. Cummings relies, that portion of his declaration is not competent evidence in support of defendant's motion for summary judgment. Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th Cir. 1978). Accordingly, the court will not consider this averment.

Dr. Cummings also opines that missing one day of medication would not have caused suicidal thoughts or actions. Cummings Decl. ¶ 8. Although Dr. Cummings identifies himself as the Chief Psychologist and Chief of Mental Health Care at High Desert State Prison, he does not describe the training and experience that would allow him to make this assertion. The court will not consider it. See People of the Territory of Guam v. Reyes, 879 F.2d 646, 650 (9th Cir. 1989) (suggesting that proponent of expert testimony has burden of laying proper foundation for its admission).

1 his declaration attached to his opposition to the motion for summary judgment, plaintiff avers
2 that on July 24, 2002, defendant Exum abruptly discontinued plaintiff's medication without
3 weaning him off of it, in reckless disregard of his health; this caused him to suffer from his
4 mental illness and produced hot and cold sweats, hot flashes, and suicidal thoughts; he also
5 smeared feces on "the door and window of CTC room." Opp'n, Ex. C at 100 ¶¶ H & I
6 (declaration of Marcus Ellington, dated December 14, 2006). In another declaration, plaintiff
7 asserts that after the medication was reduced, he suffered withdrawal, including loss of appetite
8 and poor sleep, and again avers that he smeared feces on the window and door of his cell. Pl.'s
9 Declaration filed April 16, 2007 (4/16/07 Decl.) ¶ B. Both of his suicide attempts were
10 legitimate, "not for play," plaintiff avers. Id. ¶ C.

IV. The Eighth Amendment And Medical Care

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs. In the Ninth Circuit,

> the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). The duty to provide care extends to inmates' psychiatric needs. Gibson v. County of Washoe, Nev., 290 F.3d 1175,

1187 (9th Cir. 2002); see also Olson v. Bloomberg, 339 F.3d 730, 735-36 (8th Cir. 2003) (inmate suicide cases are analyzed using same framework applicable to failure to provide appropriate medical care).

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998). A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.

Id. at 1060.

Defendant argues, in essence, that plaintiff did not have a serious medical need: his diagnosis upon discharge following his suicidal gestures or acts was mood disorder rather than any psychiatric disorder. Reply at 4-5. Plaintiff's position, as discussed above, is that he was diagnosed with depression and made two suicide attempts, both of which suggest serious medical needs.

/////
/////
/////
/////

      Both positions have support in the record. The court need not resolve the question of plaintiff's psychiatric diagnosis and its implications, however, for plaintiff has not established defendant Exum's deliberate indifference to his mental state, whatever it might be. See White v. Crow Ghost, 456 F.Supp.2d 1096, 1102 (D.N.D. 2006) (bare allegations of depression did not show serious medical need, but plaintiff's suicide gestures did).

      In May 2002, plaintiff was admitted to the MHCB after he reported feeling suicidal, but then reported to the medical personnel that he made the threat in order to get out of his cell. Plaintiff said that he told "the psychiatrist," not otherwise identified, that being on lockdown for a month "caused him to want to die, and that being out of the cell did him good." 4/16/07 Decl. ¶ C. Plaintiff was discharged with a diagnosis of mood disorder, with depression. Christie Decl., Attachs. 1, 2 & 7. Thereafter, defendant Exum began to decrease the dosage of plaintiff's two psychiatric medications, Seroquel and Remeron. Id., Attachs. 8 & 9; Opp'n, Ex. A at 20. Although plaintiff reports that the reduced dosage of Seroquel was not working for him and that he suffered serious side effects, there is no indication that he reported any of this to medical personnel. In addition, plaintiff has presented nothing suggesting that decreasing the dosage of his medication was improper in light of his primary diagnosis of mood disorder.

      Moreover, to the extent that plaintiff alleges defendant Exum demonstrated deliberate indifference by abruptly weaning plaintiff from his medications on July 24, this claim is undercut by the medical records he attaches to his opposition, showing a steadily decreasing dose. By attaching the records that undercut his contention, plaintiff has pleaded himself out this part of his claim. Sprewell v. Golden State Warriors, 266 F.3d 979, 989, as amended, 275 F.3d 1187 (9th Cir. 2001). Finally, plaintiff also suggests that his July 24 suicidal act was the result of missing a dose of Seroquel on that day and suggests that on that day, defendant Exum abruptly discontinued the medication. Opp'n, Ex. C at 100 ¶ H. He does not explain, however, how he learned that Exum had discontinued the medication on July 24; this "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" is not sufficient evidence to

9

establish that defendant Exum directed that the Seroquel be discontinued. F.T.C. v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997); Schroeder v. McDonald, 55 F.3d 454, 560 (9th Cir. 1995).

Defendant Exum has proffered sufficient evidence to show that he did not act with deliberate indifference: the records show that he did not abruptly discontinue plaintiff's medication, but instead reduced the dosage gradually. He also has proffered sufficient evidence to show that when he began to reduce the medications, plaintiff's main diagnosis was mood disorder, not depression. Although plaintiff has described side effects from the decreased medication, he has presented no evidence that defendant Exum was aware of them until after the incident of July 24, 2002. The evidence before the court shows that defendant Exum treated plaintiff in accordance with the diagnosis in May 2002 and was not made aware that the decreased medication was causing any problems until after July 24, 2002. Defendant Exum was not deliberately indifferent to plaintiff's serious medical needs and therefore is entitled to summary judgment.

V. Andrews v. Cervantes

In Andrews v. Cervantes, ___ F.3d ___, 2007 WL 1932824 (9th Cir. 2007), the Ninth Circuit held that when an inmate who has struck out within the meaning of the PLRA files a complaint that contains at least one claim based on imminent danger to the inmate, that inmate is entitled to file his entire complaint in forma pauperis. Id. at 5. The court recognized, however, that the separate provisions of the PLRA "are directed at screening out meritless suits early on," so even though the court must docket a complaint without the payment of the entire filing fee once it determines that at least one claim alleges imminent danger, it still may screen the other allegations before determining whether plaintiff will be allowed to go forward. Id. at 6. Plaintiff's original and amended complaints contained additional claims, which this court determined did not show that plaintiff was in danger of imminent harm; in light of Andrews, the court will evaluate those claims to determine whether they state a claim.

1    In the original complaint, filed October 2, 2002[6], plaintiff alleged that he was found guilty of a rules violation based on false allegations, made by a correctional officer whom he had previously sued. Complaint (Compl.) at 2-4 & 10. In the amended complaint of December 13, 2004, plaintiff alleged that defendants Sweeten, Barrow and Dharlingue hired inmates to assault plaintiff and alleged that plaintiff was a "Crip" in order to have him harmed; that Grannis, Runnels and Alameida did not respond when he notified them of these actions; and that all the acts and omissions were taken in retaliation for plaintiff's complaints about the institution and its officers. Am. Compl. ¶¶ 38a, 50. Neither of these allegations states a claim of retaliation cognizable under the civil rights act and should not go forward. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994).

IT IS HEREBY RECOMMENDED that:

1. Defendant Exum's motion for summary judgment be granted;

2. Plaintiff's cross-motion for summary judgment be denied;

3. The additional claims in plaintiff's original and amended complaints be deemed inappropriate for service; and

4. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

/////

/////

/////

---

[6] This complaint was filed in the Northern District and transferred to this court on April 2, 2004.

1 shall be served and filed within ten days after service of the objections.  The parties are advised
2 that failure to file objections within the specified time may waive the right to appeal the District
3 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
4 DATED: August 14, 2007.

_____
U.S. MAGISTRATE JUDGE

2

elli0666.57.2