01

02

03

04

05

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

06  MARCUS R. ELLINGTON,                    )
                                            )
07       Plaintiff,                         )      CASE NO. 2:04-cv-00666-RSL-JLW
                                            )
08       v.                                 )
                                            )
09  E.S. ALAMEIDA, *et al*.,                )      REPORT AND RECOMMENDATION
                                            )
10       Defendants.                        )
    _____)

11

12  I.      INTRODUCTION

13          Plaintiff is a state prisoner who is currently incarcerated at the Kern Valley State

14  Prison in Delano, California.  He proceeds pro se and in forma pauperis ("IFP") in this 42

15  U.S.C. § 1983 civil rights action.  Plaintiff alleges that the two remaining defendants in this

16  case, correctional officers Sweeten and Barron, violated plaintiff's First Amendment rights by

17  soliciting inmates at the High Desert State Prison ("HDSP") to harm plaintiff in retaliation for

18  his litigation and grievance activity, and violated plaintiff's Eighth Amendment rights by

19  housing him in the same cell as gang-affiliated inmates, as well as soliciting several of

20  plaintiff's cellmates to physically harm him.[1]  (*See* Docket 195 at 3.)  Now pending before the

21

22  _____
        [1] Aside from the claims against defendants Sweeten and Barron, all of plaintiff's claims were
    denied by the Court prior to referral of this action to the undersigned.  (*See* Dkts. 78, 99, 138, 152,
    175, 182, 192, 194, 214, and 216.)  There is also a Report and Recommendation dated April 13, 2010,
    from the previous magistrate judge pending in this case.  (*See* Dkt. 238.)

REPORT AND RECOMMENDATION - 1

01   Court are defendants' motion to dismiss on the grounds that plaintiff does not qualify for IFP

02   status, and motion for summary judgment.  (*See* Dkts. 230 and 232.)  Plaintiff has filed

03   opposition to defendants' motions, and defendants have filed a reply to plaintiff's opposition.

04   (*See* Dkts. 234, 235, and 239.)  For the reasons set forth below, the Court recommends

05   DENYING defendants' motion to dismiss on IFP status, GRANTING defendants' motion for

06   summary judgment on the merits, and DISMISSING this case with prejudice.

07        II.      BACKGROUND

08        A.     *Procedural History*

09        Plaintiff commenced this action in the U.S. District Court for the Northern District of

10   California in 2002, but the case was transferred to this Court on April 2, 2004.  (*See* Dkt. 1.)

11   By Order dated November 19, 2004, this Court dismissed plaintiff's initial complaint because

12   plaintiff admitted that he had, on three or more prior occasions, brought an action in a court of

13   the United States that had been dismissed as frivolous, malicious, or failed to state a claim

14   upon which relief could be granted.  (*See* Dkt. 9.)  In other words, plaintiff admitted that he

15   had "struck out" within the meaning of the "three strikes" provision of the Prisoner Litigation

16   Reform Act ("PLRA").  *See* 28 U.S.C. § 1915(g).  The Court, however, also noted that several

17   claims in plaintiff's complaint appeared to allege "imminent danger of serious physical

18   injury," which could trigger an exception to the "three strikes" provision that would allow

19   plaintiff to proceed IFP notwithstanding the fact that he had previously "struck out."  *See id*.

20   The Court gave plaintiff leave to amend his complaint, and deferred resolution of plaintiff's

21   request to proceed IFP until an amended complaint was filed.  (*See* Dkt. 9.)

22

01          Plaintiff filed his first amended complaint on December 13, 2004.  (*See* Dkt. 14.)

02    Because the Court found that portions of the first amended complaint satisfied the "imminent

03    danger" exception to the PLRA's "three strikes" provision, and also stated a cognizable claim

04    for relief under 42 U.S.C. § 1983 and 28 U.S.C. § 1915A, the Court granted plaintiff leave to

05    proceed IFP in this action.  (*See* Dkt. 21 at 1-2.)  The Court then ordered service of the first

06    amended complaint on three named defendants, members of the HDSP medical staff who

07    plaintiff alleged violated his Eighth Amendment rights.  (*See id*. at 2.)  Although the Court

08    subsequently granted the motions of those three defendants for summary judgment, the Court

09    also gave plaintiff leave to file a second amended complaint because "it appears that Plaintiff

10    may plead sufficient facts upon which relief may be granted against defendants Sweeten and

11    Barron."  (Dkt. 182 at 3; *see* Dkt. 152.)

12          Plaintiff filed his second amended complaint on April 3, 2008.  (*See* Dkt. 187.)  Due to

13    plaintiff's persistent disregard of the Court's admonishments regarding plaintiff's excessive

14    filings, however, the Court dismissed the complaint on September 5, 2008.  (*See* Dkts. 192

15    and 194.)  Plaintiff was granted leave to file a third amended complaint that complied with the

16    twenty-five page limit, as well as other requirements set forth by the Court.  (*See* Dkt. 194.)

17    On September 22, 2008, plaintiff filed his third amended complaint alleging violations of his

18    constitutional rights under the First and Eighth Amendments by defendants Sweeten and

19    Barron.  (*See* Dkt. 195.)

20          By Order dated February 3, 2009, the Court found that the complaint stated cognizable

21    claims for relief, and ordered service on both defendants.  (*See* Dkts. 196 and 198.)

22    Defendants filed an answer denying plaintiff's claims on May 18, 2009.  (*See* Dkt. 201.)  As

01   mentioned above, currently before this Court are defendants' motion to dismiss this action on

02   the grounds that plaintiff does not qualify for IFP status, and defendants' motion for summary

03   judgment on the merits.  (*See* Dkts. 230 and 232.)

04          B.      *Contentions of the Parties*

05          This case proceeds on plaintiff's Third Amended Complaint, which sets forth claims

06   arising from incidents plaintiff alleges took place in 2003 and 2004 during his incarceration at

07   HDSP.  (*See* Dkt. 195 at 3.)  Although plaintiff does not specifically state which constitutional

08   rights were violated, plaintiff's claims appear to arise from the First and Eighth Amendments

09   to the U.S. Constitution.  Specifically, plaintiff claims that defendants (1) violated his First

10   Amendment rights by soliciting other inmates to physically assault him or steal from him in

11   retaliation for plaintiff's litigation and grievance activity against correctional and medical

12   staff at HDSP, (2) violated his Eighth Amendment rights by housing plaintiff in a cell with

13   gang-affiliated inmates, thereby disregarding an excessive risk to plaintiff's health and safety;

14   and (3) violated his Eighth Amendment rights by soliciting inmates to physically harm him,

15   because he alleges one inmate assaulted him at defendants' urging.  (*See id.*; Dkt. 234 at 2-3.)

16          Defendants contend that plaintiff is a vexatious litigant whose IFP status should be

17   revoked pursuant to 28 U.S.C. § 1915(g), and that this case should therefore be dismissed.

18   (*See* Dkt. 230.)  Alternatively, defendants assert that they are entitled to summary judgment

19   on the claims set forth in plaintiff's Third Amended Complaint because plaintiff has not

20   established a genuine issue of material fact for trial, and in any event, they are entitled to

21   qualified immunity.  (*See* Dkts. 232 and 239.)

22

REPORT AND RECOMMENDATION - 4

01          C.      *Undisputed Facts*

02          The following facts, which were primarily set forth by properly signed declarations

03   provided by defendants, remain uncontroverted by plaintiff.

04          In 2003 and 2004, plaintiff was housed in HDSP Facility B, Building 1, where

05   defendants worked as correctional floor officers and were responsible for supervising inmate

06   activities, assisting with determining inmate housing assignments, and ensuring the safety and

07   security of inmates, officers, and staff within the building.  (*See* Dkt. 232, Sweeten

08   Declaration; Barron Decl.)  Correctional staff at HDSP completed an initial housing review

09   form for plaintiff on June 5, 2001, which indicated that plaintiff had a "Gang/Disruptive

10   Group Affiliation" with the Crips at that time.[2]  (*See id*., Ex. B; Barron Decl.; Vervoort Decl.)

11          Custody staff at HDSP attempt to house compatible inmates with each other, which

12   frequently includes housing inmates affiliated with the same gang in a cell together if

13   possible, as well as housing non-affiliated inmates in a cell together.  (*See id.*, Sweeten Decl.;

14   Barron Decl.)  Sometimes institutional need, such as lack of available bed space, may require

15   gang-affiliated inmates to be housed with non-affiliated inmates.  (*See id*.)  When an inmate

16   requests a cell move due to lack of compatibility with a cellmate, custody staff completes the

17   cell move once bed space becomes available.  (*See id*.)  Upon receipt of an inmate's request

18   for a new cellmate, custody staff will first ask the inmates to find other compatible cellmates

19   within the building.  (*See id*.)  If an inmate does not identify a compatible cellmate, custody

20   staff will attempt to identify one and complete the cell move as soon as possible.  (*See id*.)

21

22

---

[2] Plaintiff asserts that he "has never been a Crip," and provides evidence that by December 2005, HDSP and the Kern Valley State Prison both recognized him as a non-affiliated inmate.  (*See* Dkt. 234 at 2; *id*. Ex. A; Dkt. 233, Ellington Deposition at 52.)

01     While plaintiff lived at HDSP, plaintiff shared his cell without incident with several

02  Crip-affiliated inmates, including Alton Allen, Anthony Goodman, and Eugene Jones, as well

03  as several unaffiliated inmates, including Antoine Thompson and Isaiah Williams.  (*See* Dkt.

04  232, Defendant's Statement of Undisputed Facts ("DSUF") at 3-4; Dkt. 233, Ellington Dep. at

05  71-72, 82-91.)  He was also on friendly terms with several Crip-affiliated inmates living in the

06  building, including Phillip Joseph and Charles Norwood.  (*See* Dkt. 232, DSUF at 3; Dkt.

07  233, Ellington Dep. at 73-78.)  Although plaintiff or his current cellmate at HDSP requested a

08  cell move due to incompatibility on several occasions, on every occasion the cell move was

09  completed before any kind of physical altercation or disturbance took place.  (*See* Dkt. 232,

10  DSUF at 4.)  For example, when plaintiff requested a cell move from Crip-affiliated inmate

11  Jones based upon incompatibility, correctional staff completed the move within two weeks,

12  even though plaintiff and Jones failed to identify any potentially compatible cellmates for

13  correctional staff.  (*See id.*, Ex. E; Sweeten Decl; Dkt. 233, Ellington Dep. at 87-89.)

14     The only inmate at HDSP with whom plaintiff had a physical altercation in 2003 or

15  2004 was Savon Dennis, a Crip-affiliated inmate.[3]  (*See* Dkt. 232, Ex. C; Dkt. 233, Ellington

16  Dep. at 91.)  Specifically, when defendant Sweeten inspected plaintiff's cell on August 9,

17  2003, he found that plaintiff and Dennis had both sustained physical injuries, and concluded

18  they had engaged in a physical altercation.[4]  (*See* Dkt. 232, Sweeten Decl.; *id.*, Ex. C.)

19  

20     [3] Whereas defendants characterize plaintiff's altercation with Dennis as mutual in nature,
plaintiff maintains that "Mr. Dennis assaulted me.  I didn't get into a fight with him."  (Dkt. 233,
21  Ellington Dep. at 91; *see also* Dkt. 232 at 4-5.)  Thus, this fact is in dispute.
     [4] The parties also dispute the time of day that Sweeten responded to the incident in plaintiff's
22  cell.  While Sweeten reported that he inspected the cell at approximately 11 a.m., plaintiff argues that
Sweeten actually "saw the blood was on me, he saw that my mouth had been busted" as early as 9-
9:30 a.m., but did not respond or report the incident until hours later.  (Dkt. 233, Ellington Dep. at 91-
100.)

01 Plaintiff had blood on his pants and bottom lip, and Dennis had sustained small cuts on his

02 left finger and left thumb.  (*See id*.)  Because Sweeten reported that he could not identify the

03 aggressor, both inmates were issued a rules violation report for engaging in mutual combat.

04 (*See id*., Exs. C and F.)  Immediately following plaintiff's altercation with Dennis,

05 correctional staff moved Dennis out of plaintiff's cell.  (*See id*., Sweeten Decl.; Ellington Dep.

06 at 100.)  Plaintiff does not allege that he had requested a cell move prior to this incident.

07        D.    *Disputed Facts*

08        The parties disagree regarding whether defendants asked or encouraged several Crip-

09 affiliated inmates, including Goodman, Jones, and Dennis, to physically assault, harm, or steal

10 from plaintiff, whether in retaliation for plaintiff's litigation and grievance history or for any

11 other reason.  (*See* Dkt. 195; Dkt. 232, DSUF at 1-4; Dkt. 233, Ellington Dep.)  As discussed

12 in more detail below, plaintiff's evidence to support his contention that defendants solicited

13 inmates at HDSP to harm him consists of two unsigned and unsworn declarations purportedly

14 dictated by inmates Goodman and Jones.[5]  (*See* Dkt. 195, Ex. A and B.)  Specifically,

15 Goodman's declaration states that when he requested a cell transfer from plaintiff in 2003,

16 Sweeten replied, "Why don't you do us a favor and go in there and beat the shit out of

17 Ellington we've got that ass on video tape in the Central Treatment Center (CTC) dancing."

18 (*Id*., Ex. A.)  Similarly, Jones' declaration provides that when he asked Sweeten about a cell

19 move in 2004, Sweeten responded, "Upon the cell move being submitted BEAT HIS ASS

20 (Ellington).  We don't give a damn about him.  Then we'll move you."  (*Id*., Ex. B.)  Jones'

21 declaration also states that Barron told him, "'You know what you've got to do to get a cell

22

---

        [5] For the reasons discussed *infra*, these two declarations are not competent evidence for
purposes of defendants' motion for summary judgment.  Their contents are recited here only as a
statement of plaintiff's allegations.

REPORT AND RECOMMENDATION - 7

01  move.'  Which [Jones] perceived as an invite to fight Ellington."  (*Id.*)  Although plaintiff also

02  claims that at the time of the incident with Dennis, "[h]e told me that Sweeten had told him to

03  slug me in the mouth . . . because I was a – a pedophile," plaintiff has failed to provide any

04  evidence (such as a declaration from Dennis, or any other inmate at HDSP) to support his

05  assertion that Dennis assaulted plaintiff at defendants' behest.  (Dkt. 233, Ellington Dep. at

06  91-92.)

07      Furthermore, in this action the parties dispute whether defendants possessed any

08  knowledge of plaintiff's commitment offense, litigation or administrative grievance history

09  (aside from one grievance plaintiff filed in 2004 requesting a cell move from Jones), or gang

10  affiliation status.  They also dispute whether housing plaintiff in the same cell as Crip-

11  affiliated inmates at HDSP presented a substantial risk of harm to plaintiff of which

12  defendants were aware.  (*See* Dkt. 232, DSUF at 4-5; Sweeten Decl.; Barron Decl.; Dkt. 233,

13  Ellington Dep. at 92-93.)

14      III.    DISCUSSION

15      A.    *Defendants' Motion to Revoke Plaintiff's IFP Status and Dismiss the Case*

16      A prisoner may not proceed IFP in a civil action if he has, on three or more prior

17  occasions, brought civil actions that were dismissed as frivolous, malicious, or for failure to

18  state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  An exception to

19  this general rule applies if a prisoner alleges that he is "under imminent danger of serious

20  physical injury."  *Id*.  In this case, it is undisputed that plaintiff has "struck out" as a vexatious

21  litigant under the PLRA, and therefore cannot proceed  IFP unless he satisfies the "imminent

22  danger" exception of 28 U.S.C. § 1915(g).  (*See* Dkts. 1, 9, 14, 21, 235, and 239.)  When this

01   Court considered plaintiff's request to proceed IFP in this action, however, it found that

02   plaintiff's claims, as set forth in the first amended complaint, sufficiently alleged that he was

03   "under imminent danger of serious physical injury" to satisfy the exception.  (*See* Dkt. 21 at

04   1-2.)

05          In their "Motion to Dismiss Plaintiff's Complaint (Vexatious Litigant Motion),"

06   defendants argue that plaintiff's case should nevertheless be dismissed because he "was not in

07   imminent danger of serious physical injury when he filed his Third Amended Complaint."

08   (Dkt. 230, Memorandum of Points and Authorities at 6.)  Specifically, "[b]y the time he filed

09   this complaint, Ellington was an inmate at California Substance Abuse Treatment Facility and

10   State Prison in Corcoran, California - 454 miles away from High Desert State Prison, where

11   Sweeten and Barron allegedly solicited other inmates to harm him."  (*Id*.)  As a result,

12   defendants ask this Court to revoke plaintiff's IFP status pursuant to 28 U.S.C. § 1915(g),

13   dismiss this case, and require plaintiff to immediately pay all filing fees before refiling this

14   matter.  (*See id*.)  In response, plaintiff argues that he did not need to demonstrate imminent

15   danger at the time he filed his third amended complaint because he had already made such a

16   showing in his first amended complaint, when the Court granted his request to proceed IFP in

17   this action.  (*See* Dkt. 235 at 2.)  The question before this Court is therefore whether

18   plaintiff's IFP status can and should be revoked if he could no longer satisfy the "imminent

19   danger" exception at the time he filed his third amended complaint.

20          Based upon this Court's review of the record and relevant case law, defendants'

21   contentions appear to be based upon a misunderstanding of the Ninth Circuit's holding in

22   *Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007).  Specifically, the *Andrews* court

01  held that "the availability of the [imminent danger] exception turns on the conditions a

02  prisoner faced *at the time the complaint was filed*, not at some earlier or later time." *Andrews*,

03  493 F.3d at 1053 (emphasis added). Although the *Andrews* court did not expressly

04  distinguish between the time when an "initial" versus an "amended" complaint is filed, the

05  court indicated that the relevant time to determine whether an inmate satisfies the "imminent

06  danger" exception to the three strikes rule is at the beginning of an action or lawsuit. For

07  example, the *Andrews* court emphasized that 28 U.S.C. § 1915(g) is only concerned with the

08  "initial act" of bringing an "action," which "refers to a case as a whole rather than just its

09  individual claims":

> The PLRA provides that a prisoner with three strikes cannot use
> IFP status to "*bring* a civil action . . . unless the prisoner *is*
> under imminent danger of serious physical injury." 28 U.S.C.
> § 1915(g) (emphasis added). The exception's use of the present
> tense, combined with its concern only with the initial act of
> "bring[ing]" the lawsuit, indicates to us that the exception
> applies if the danger existed at the time the prisoner filed the
> complaint.

15  *Id*. at 1052-54.[6] Furthermore, the court observed that "the three-strikes rule is a screening

16  device" to help determine whether an action may proceed without prepayment of the filing fee

17  "based upon the allegations appearing on the face of the complaint." *Id*. at 1050.

18      Similarly, this Court, applying the Ninth Circuit's decision in *Andrews*, has recognized

19  that "§ 1915(g) addresses *the time a prisoner brings an action*," and not simply any time a

20  complaint is filed. *Andrews v. Cervantes*, 2008 WL 1970345, *1 (E.D. Cal. 2008) (emphasis

---

[6] Moreover, the *Andrews* court held that even if several claims in a complaint do not allege an
imminent danger of serious physical injury, if some of the claims do meet the requisite standard, the
prisoner has satisfied the "imminent danger" exception and qualifies for IFP status. *See id*. at 1054.
"[O]nce a prisoner satisfies the exception . . . the district court must docket the entire complaint and
resolve all of its claims, without requiring the upfront payment of the filing fee." *Id*. at 1053-54.

01  added) (citing *Andrews*, 493 F.3d at 1053).  Specifically, this Court held that "despite the

02  passage of time and plaintiff's transfer away from the California prison system . . . at the time

03  he brought this action, he was in 'imminent danger of serious physical harm,'" and therefore

04  plaintiff could proceed IFP with an amended complaint.  *Id*.  As a result, "neither the passage

05  of time nor the transfer of a prisoner to a different facility has any impact on the determination

06  of whether the [imminent danger] exception to the rule applies" in a given case.  *Id*.  *See also*

07  *Jensen v. Knowles*, 2008 WL 744726 (E.D. Cal. 2008) (denying defendants' motion for

08  revocation of plaintiff's IFP status and dismissal of the action because although plaintiff "was

09  no longer incarcerated at [the prison] where the alleged conduct had been occurred," plaintiff

10  had "satisfied the imminent danger exception *at the time the initial complaint was filed*.").

11  Moreover, the case cited by defendants in support of their argument did not decide, as

12  defendants suggest, that this Court must look only to the "operative complaint for the case."

13  (Dkt. 239 at 3.)  *See Wilson v. Hubbard*, 2009 WL 2971619 (E.D. Cal. 2009) (holding that

14  plaintiff did not suffer "an imminent threat of serious physical injury at the time he filed this

15  action" because plaintiff was clearly under no imminent danger at the time plaintiff filed his

16  original complaint, his first amended complaint, or "the operative complaint, i.e. the second

17  amended complaint. . . .").

18       Thus, case law does not support defendants' argument that this Court must re-evaluate

19  plaintiff's IFP status at this juncture, simply because plaintiff has filed a third amended

20  complaint in this action.  As discussed above, this Court properly considered whether plaintiff

21  was under imminent danger of serious physical injury at the time he brought this action, and

22  "not at some earlier or later time," in accordance with the Ninth Circuit's decision in

01 *Andrews*.  Specifically, when this Court found that allegations appearing on the face of the

02 initial complaint might satisfy the "imminent danger" exception, it expressly deferred

03 consideration of plaintiff's request to proceed IFP.  (*See* Dkt. 9.)  The Court subsequently

04 found that plaintiff's first amended complaint (which set forth plaintiff's claims regarding

05 Sweeten and Barron, among other defendants) satisfied the exception, and granted plaintiff's

06 request to proceed IFP in this action.  (*See* Dkt. 21 at 1-2.)  The fact that plaintiff was

07 subsequently transferred to a different prison is irrelevant.

08 Accordingly, defendants' request for this Court to revoke plaintiff's IFP status

09 pursuant to 28 U.S.C. § 1915(g) and dismiss this case is DENIED.   Plaintiff remains

10 obligated to pay the $150.00 statutory filing fee in monthly payments, which shall be

11 collected and paid in accordance with this Court's Order For Payment of Inmate Filing Fee

12 dated May 17, 2005.  (*See* Dkt. 22.)

13 B.    *Defendants' Motion for Summary Judgment*

14 Defendants also move this Court for summary judgment as to plaintiff's claims that

15 defendants (1) violated plaintiff's First Amendment rights by soliciting several Crip-affiliated

16 inmates to physically harm or steal from plaintiff in retaliation for his litigation and

17 grievances against custody and medical staff in the HDSP, (2) violated plaintiff's Eighth

18 Amendment rights by housing plaintiff in a cell with Crip-affiliated inmates, thereby

19 disregarding an excessive risk to plaintiff's health and safety, and (3) violated plaintiff's

20 Eighth Amendment rights by soliciting several Crip-affiliated inmates to physically harm

21 plaintiff, because plaintiff alleges that Dennis assaulted him at defendants' behest.  (*See* Dkt.

22 195 at 3; Dkt. 232.)

01          Summary judgment is appropriate when, viewing the facts in the light most favorable

02   to the nonmoving party, the records show that "there is no genuine issue as to any material

03   fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

04   The Court draws all reasonable inferences in favor of the non-moving party. *United States v.*

05   *Johnson Controls*, *Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its

06   initial burden by producing affirmative evidence that negates an essential element of the

07   nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence

08   needed to satisfy his burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz*

09   *Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  Once the moving party has satisfied its burden, it

10   is entitled to summary judgment if the non-moving party fails to designate, by affidavits,

11   depositions, answers to interrogatories, or admissions on file, "specific facts showing that

12   there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The

13   mere existence of a scintilla of evidence in support of the non-moving party's position is not

14   sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

15   "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence

16   from which a reasonable jury could return a verdict in its favor." *Id.* at 1221.

17          In addition, to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show

18   (i) that he suffered a violation of rights protected by the Constitution or created by federal

19   statute, and (ii) that the violation was proximately caused by a person acting under color of

20   state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation

21   requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did " 'an

22   affirmative act, participates in another's affirmative acts, or omits to perform an act which

01 [that person] is legally required to do that causes the deprivation of which complaint is

02 made.'" *Hydrick v. Hunter,* 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy,* 588

03 F.2d 740, 743 (9th Cir. 1978). "[T]he 'requisite causal connection can be established not only

04 by some kind of direct personal participation in the deprivation, but also by setting in motion

05 a series of acts by others which the actor knows or reasonably should know would cause

06 others to inflict the constitutional injury.'" *Id.* (quoting *Johnson,* 588 F.2d at 743-44).

07     1.    *Plaintiff's Unsigned and Unsworn Declarations from Goodman and Jones*

08     As mentioned above, plaintiff's primary evidence to support his First and Eighth

09 Amendment claims in this case consist of declarations from two former cellmates of plaintiff,

10 Goodman and Jones. (*See* Dkt. 195, Ex. A and B.) These two declarations constitute the only

11 evidence proffered by the plaintiff, aside from his own testimony, that defendants solicited or

12 encouraged any inmates at HDSP to physically harm or steal from plaintiff, and are therefore

13 critical to each of plaintiff's claims set forth in his Third Amended Complaint. (*See* Dkt. 195

14 at 3-4.) For example, plaintiff failed to provide any evidence to support his assertion that

15 Dennis, the only prisoner at HDSP who plaintiff alleges actually harmed him, did so at

16 defendants' behest, because Dennis "didn't write [a declaration] for me." (Dkt. 233, Ellington

17 Dep. at 92.)

18     Given the importance of the evidence from Goodman and Jones, the fact that these

19 two prisoners' declarations contain only typed signatures is fatal to plaintiff's case, because

20 the declarations have no evidentiary value. *See* 28 U.S.C. § 1746 (providing that unsworn

21 declarations may be regarded "with like force and effect" as sworn declarations, if they are

22 subscribed with the declarant's signature as true under penalty of perjury). Specifically,

01  Goodman's declaration was not executed with Goodman's signature, accompanied by an

02  assertion that Goodman made the statements contained therein under oath, or accompanied by

03  a statement that Goodman signed the declaration under penalty of perjury.  (*See id.*, Ex. A.)

04  Similarly, although the unsworn declaration from Jones contains an assertion that Jones made

05  the statements contained therein under penalty of perjury, it was not executed with Jones'

06  signature.  (*See id.*, Ex. B.)

07          Indeed, there is no evidence in this case, aside from plaintiff's self-serving testimony,

08  that either Goodman or Jones even saw these two declarations, or made the statements

09  contained therein.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.

10  2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is

11  'uncorroborated and self-serving' testimony. . . .")  Plaintiff admits that he typed up both

12  declarations himself, but asserts the inmates verbally "sign[ed] on" to what plaintiff had

13  typed.  (Dkt. 233, Ellington Dep. at 89.)  Specifically, plaintiff was asked during his

14  deposition if he possessed "a signed copy of [Jones'] declaration," because the one attached to

15  plaintiff's Third Amended Complaint "looks like his declaration was typed up for him and his

16  name is typed in."  (*Id.*)  Plaintiff responded, "[T]hat's the only one that I have in my

17  possession . . . He dictated that to me as I typed."  (*Id.*)  Similarly, plaintiff acknowledged that

18  Goodman had told plaintiff about the incident described in his declaration, and that "his name

19  [was] typed" on the signature line at the bottom.  (*Id.* at 84.)

20          Moreover, plaintiff was specifically advised on at least two occasions, pursuant to this

21  Court's Orders dated December 8, 2005, and March 11, 2009, that any motions or opposition

22  supported by unsigned affidavits or declarations in this case would be stricken.  (*See* Dkt. 56

REPORT AND RECOMMENDATION - 15

01  at 5; Dkt. 198 at 5.)  Plaintiff has been provided numerous opportunities in this action to

02  amend his complaints to cure any defects, and support his allegations against defendants.

03  (*See* Dkts. 182, 187, 192, and 194.)  Because plaintiff has failed to comply with this Court's

04  admonishments and directions throughout this action, he has also been advised that failure to

05  do so may result in the imposition of sanctions, or dismissal of this action with prejudice.

06  (*See* Dkt. 194.)  Under these circumstances, it is inappropriate to provide plaintiff with yet

07  another opportunity to attempt to cure the defects in his complaint.

08         With these two declarations stricken from the record, plaintiff has not provided any

09  evidence to support his claim that defendants solicited inmates at HDSP to harm him.  *See*

10  *Crumpton*, 947 F.2d at 1420 (providing that § 1983 requires a plaintiff to show a federal

11  deprivation proximately caused by a state actor).  This is a wholly sufficient basis to grant

12  defendants' motion for summary judgment as to plaintiff's First and Eighth Amendment

13  claims.  Because plaintiff's claims against defendants have risen, like a phoenix, from the

14  ashes on several occasions since plaintiff commenced this action in 2002, however, the Court

15  will also address the merits of plaintiff's claims in the interests of completeness.  As discussed

16  below, defendants are entitled to summary judgment on the merits even assuming *arguendo*

17  that plaintiff could cure the defects in the declarations from Goodman and Jones, if provided

18  yet another opportunity to do so.

19         2.     *Plaintiff's First Amendment Retaliation Claim*

20         In his Third Amended Complaint, plaintiff asserts that defendants retaliated against

21  him because of (1) plaintiff's commitment offense of rape, (2) defendants' belief that plaintiff

22  was a child molester, (3) defendants' belief that plaintiff was a "snitch," and (4) "due to his

01  writing-up of custodial and medical staff" at HDSP in the past.  (Dkt. 195 at 3.)

02       As a threshold matter, however, retaliation claims must allege that plaintiff was

03  engaging in a protected activity under the First Amendment and the state impermissibly

04  infringed on the plaintiff's right to engage in that activity.  *See Rizzo v. Dawson*, 778 F.2d

05  527, 532 (9th Cir. 1985).  As a result, plaintiff's assertions that defendants retaliated against

06  him because they believed plaintiff was a rapist or child molester fail to state a claim for

07  retaliation.  Moreover, in this case plaintiff has not provided any evidence, such as affidavits

08  or declarations from inmates, which contradict defendants' assertions in their declarations that

09  "while Ellington lived in [HDSP], I was not aware of his commitment offense, or of any

10  charges he received," and "never called Ellington a child molester or a snitch . . . [or] accused

11  him of any crime."  (Dkt. 232, Sweeten Decl; Barron Decl.; s*ee* Dkts. 195 and 234.)  Without

12  more than the bare assertion that defendants retaliated against plaintiff because they believed

13  plaintiff was a rapist, child molester, and "snitch," plaintiff has failed to present a genuine

14  issue of material fact for trial.  *See Rizzo*, 778 F.2d at 532 n.4 ("[B]are allegations of arbitrary

15  retaliation are [not] enough . . . to avoid dismissal.").  Thus, this Court proceeds to plaintiff's

16  argument that defendants retaliated against him "due to his writing-up of custodial and

17  medical staff," which properly states a claim for relief under the First Amendment.

18       Plaintiff contends that defendants solicited several Crip-affiliated inmates who were

19  living with plaintiff, including Goodman, Jones, and Dennis, to harm him in retaliation for

20  plaintiff's lawsuits and grievances filed against staff at HDSP.  (*See* Dkt. 195 at 3.)  In

21  particular, plaintiff claims that defendants sought to harm him because he was "a litigator,"

22  and because of a lawsuit plaintiff had filed against "something like 76 officers and medical

01  staff" of HDSP in 1999.  (Dkt. 233, Ellington Dep. at 40-41, 120-122.)  Plaintiff admits that

02  Goodman and Jones declined to harm him, but claims that Dennis did physically assault him

03  at the defendants' behest.  (*See id*. at 92-93, 119.)

04      Although plaintiff's complaint also contends that defendants solicited inmates to steal

05  from him, with the exception of inmate Dennis (who plaintiff asserts packed several of

06  plaintiff's personal items - such as food items, tobacco, and deodorant – when he moved out

07  of their shared cell), plaintiff has not identified any individuals who stole from him at HDSP

08  or any stolen items.  Plaintiff states that he is "pretty sure" inmates at HDSP stole from him,

09  although "who it was and when it happened, I can't say."  (Dkt. 233, Ellington Dep. at 105.)

10  Plaintiff also admits that he did not file any administrative grievances concerning stolen items

11  at HDSP.  (*See id*. at 103-09.)  Because there is no evidence in the record of any theft

12  committed against plaintiff at HDSP, by Dennis or anyone else, this Court limits its analysis

13  to plaintiff's allegation that the defendants solicited inmates to physically harm him, as

14  alleged in the declarations from Goodman and Jones.  (*See* Dkt. 195 at 3.)

15      Prisoners have protected "First Amendment rights to file prison grievances and to

16  pursue civil rights litigation in the courts."  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir.

17  2005).  In order for a prisoner to prevail on a claim of First Amendment retaliation under

18  § 1983, a plaintiff must establish five elements: "(1) An assertion that a state actor took some

19  adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

20  such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action

21  did not reasonably advance a legitimate correctional goal," such as preserving institutional

22  order and discipline.  *Id.* at 567-68.  *See also Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir.

01  2000); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

02      Thus, in each case, a plaintiff asserting a retaliation claim must show that the

03  defendants were "actually aware" of his protected speech, and establish a "but-for" causal

04  nexus between the alleged retaliation and protected speech. *Pratt v. Rowand*, 65 F.3d 802,

05  809 (9th Cir. 1995) (holding that the plaintiff bears the burden of pleading and proving

06  retaliatory motive). A plaintiff must submit evidence, either direct or circumstantial, to

07  establish this causal link. *See id.* at 806; *McDonald v. Campbell*, 2010 WL 1328696 (E.D.

08  Cal. 2010) ("The prisoner must submit evidence demonstrating a link between the exercise of

09  his constitutional rights and the defendant's allegedly retaliatory action."). In this context, a

10  plaintiff can generally raise a genuine issue of material fact regarding retaliatory motive by

11  "produc[ing], in addition to evidence that the defendant knew of the protected speech, at least

12  (1) evidence of proximity in time between the protected speech and the allegedly retaliatory

13  decision, (2) evidence that the defendant expressed opposition to the speech, or (3) evidence

14  that the defendant's proffered reason for the adverse action was false or pretextual." *Pinard v.*

15  *Clatskanie School Dist.*, 467 F.3d 755, 771 n.21 (9th Cir. 2006) (citing *Keyser v. Sacramento*

16  *City Unif. Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001)).

17      In this case, plaintiff has proffered evidence to support only four of the five elements

18  of his retaliation claim. First, if the declarations of Goodman and Jones are presumed to be

19  authentic, they support plaintiff's claim that defendants took adverse action against him. (*See*

20  Dkt. 195, Exs. A and B.) Adverse action is action that "would chill a person of ordinary

21  firmness" from engaging in that activity. *Pinard v. Clatskanie School Dist.*, 467 F.3d 755,

22  770 (9th Cir. 2006). In the prison context, the action taken must be clearly adverse to the

01  plaintiff.  *See e.g.*, *Rhodes*, 408 F.3d at 568 (arbitrary confiscation and destruction of property,

02  initiation of a prison transfer, and assault in retaliation for filing grievances); *Austin v.*

03  *Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in administrative

04  segregation for filing grievances); *Pratt*, 65 F.3d at 806 (retaliatory prison transfer and

05  double-cell status in retaliation).  Although Goodman and Jones never physically harmed

06  plaintiff, their declarations assert that defendants encouraged or solicited them to do so.  (*See*

07  Dkt. 195, Exs. A and B.)  Assuming the declarations are correct, the Court finds that

08  defendants' solicitation of physical harm to plaintiff at the hands of other inmates was

09  sufficient to constitute adverse action under § 1983, even if defendants' instructions were

10  never carried out.[7]  *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989)

11  (holding that plaintiff's claim that prison officials retaliated against him for his grievance

12  activities by labeling him a "snitch," where plaintiff's claim was also supported by numerous

13  inmate affidavits confirming that defendants had called plaintiff a "snitch" in front of other

14  inmates with the intention of having plaintiff harmed or killed, presented a genuine issue of

15  material fact for trial).

16      In addition to proffering evidence of defendants' adverse action, plaintiff can likely

17  support three other prongs of his retaliation claim.  Specifically, the parties do not appear to

18  dispute the fact that plaintiff engaged in speech activities protected by the First Amendment

19  during the course of his incarceration at HDSP by filing numerous lawsuits and grievances.

20  (*See* Dkt. 233, Ellington Dep. at 10-11, 58, 105-06; Dkts. 232 and 239.)  *See also Rhodes*, 408

21  _____

22  [7] Plaintiff admits that aside from his physical altercation with Dennis, no other cellmate at
HDSP actually harmed him.  (*See* Dkt. 233, Ellington Dep. at 103.)  Although plaintiff alleges that
Dennis harmed him at defendants' direction "because I was a – a pedophile," there is no evidence in
the record to support this claim.  (*Id.* at 92.)  Plaintiff did not file a declaration from Dennis to support
this allegation.

01   F.3d at 567 ("Of fundamental import to prisoners are their First Amendment right[s] to file

02   prison grievances . . . [and to] pursue civil rights litigation in the courts."). Moreover,

03   although it might have required something more to chill *this* plaintiff's litigation activities, "a

04   person of ordinary firmness" would have suffered a "chilling effect" on his speech due to

05   defendants' actions this case. (Dkt. 233, Ellington Dep. at 43.) *See also Rhodes*, 408 F.3d at

06   569 (holding that a plaintiff need not demonstrate that his speech was "actually inhibited or

07   suppressed," if defendant's actions "would chill or silence a person of ordinary firmness from

08   future First Amendment activities."). Finally, defendants' actions were not justified by any

09   legitimate penological objective. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("Prison

10   conditions may be restrictive and even harsh . . . but gratuitously allowing the beating or rape

11   of one prisoner by another serve no 'legitimate penological objectiv[e].'").

12        The weakness in plaintiff's case is that he has not presented any evidence of a

13   retaliatory motive, a critical element of his claim. Plaintiff asserts that defendants solicited

14   the Crip-affiliated inmates to harm him "just because I had disgruntled some of their

15   coworkers with [plaintiff's] 1999 lawsuit." (Dkt. 233, Ellington Dep. at 58; *see id*. at 40-42.)

16   Although he admits that he cannot recall any date or time when the defendants made any

17   statement around him specifically referencing any of his First Amendment activities, plaintiff

18   maintains that the retaliation "was because of that 1999 lawsuit." (*Id*. at 58; *see id*. at 122.)

19   Plaintiff asserts that defendants "had it in for me . . . [b]ecause I'm a litigator." (*Id*. at 120.)

20   Without more, however, plaintiff's conclusory assertions are insufficient to withstand

21   defendants' motion for summary judgment on this claim. *See Rizzo*, 778 F.2d at 532 n.4.

22

01          Specifically, plaintiff has not provided any evidence to show that defendants were

02   even aware of his First Amendment activities.  *See Pratt*, 65 F.3d at 808 (no retaliatory

03   motive where the plaintiff has not provided evidence that defendants were aware of the

04   plaintiff's First Amendment activity).  For example, plaintiff has failed to produce any

05   declarations or affidavits to contradict defendants' statements in their declarations that, with

06   the sole exception of plaintiff's request for a cell move in 2004 from inmate Jones, defendants

07   had no knowledge of plaintiff's litigation history or any grievances he filed at HDSP.  (*See*

08   Dkt. 232, Sweeten Decl.; Barron Decl.)  Plaintiff does not allege that defendants were

09   retaliating against him as a result of his request for a cell change from Jones.  (*See* Dkts. 195

10   and 234.)  Without additional evidence, plaintiff has also not established that because

11   defendants knew about his grievance regarding his cell change from Jones, defendants must

12   have been aware of all the grievances plaintiff filed at HDSP.  (*See* Dkt. 234 at 5.)

13          Furthermore, plaintiff has failed to provide any direct or circumstantial evidence to

14   establish a "but-for" causal nexus, and show that defendants took the retaliatory action against

15   him *because of* plaintiff's exercise of his First Amendment rights.  *See Rhodes*, 408 F.3d at

16   567-68; *Pratt*, 65 F.3d at 807.  For example, the declarations from Goodman and Jones do not

17   provide any evidence of a retaliatory motive stemming from plaintiff's First Amendment

18   activities.  Jones' declaration does not suggest any reason for the defendants' actions.  (Dkt.

19   195, Ex. B.)  Although Goodman stated that Sweeten asked him to beat up plaintiff because

20   there was a videotape of plaintiff "in the Central Treatment Center (CTC) dancing," without

21   more, this vague statement, which references plaintiff's alleged physical infirmities, cannot

22   reasonably be construed as referencing a lawsuit or grievance brought by the plaintiff against

01   HDSP medical staff years ago.  (Dkt. 195, Ex. A.)  Finally, plaintiff asserts that Dennis

02   punched him on Sweeten's behalf because Sweeten thought plaintiff was "a pedophile" or

03   "child molester," not because of plaintiff's speech activities.  (*See* Dkt. 232, Ex. B; Dkt. 233,

04   Ellington Dep. at 91-92.)

05         Accordingly, plaintiff has failed to offer evidence from which a reasonable jury could

06   return a verdict in his favor based upon his claim that defendants retaliated against him for his

07   First Amendment activities at HDSP.  *See Triton*, 68 F.3d at 1221.  Specifically, he has not

08   met his burden of demonstrating the existence of material factual disputes for trial.  *See Pratt*,

09   65 F.3d at 809.  As a result, I recommend that defendants' motion for summary judgment on

10   this claim be granted.

11         3.    *Plaintiff's Eighth Amendment Claim that Defendents Disregarded an*
             *Excessive Risk to His Health and Safety*

12

13         Plaintiff claims that defendants violated his Eighth Amendment rights by housing him

14   in the same cell as Crip-affiliated inmates, thereby disregarding an excessive risk to his health

15   and safety.  (*See* Dkt. 195 at 4.)  Specifically, plaintiff argues that defendants knew that

16   plaintiff was not affiliated with any gang, and was therefore more vulnerable to harm by Crip-

17   affiliated cellmates.  (*See* Dkt. 195 at 3-4; Dkt. 234 at 2-3 and Ex. A.)  Plaintiff also asserts

18   that defendants falsely identified him as a "Crip" on numerous occasions at HDSP in order to

19   increase the likelihood that plaintiff would be housed with Crips who were likely to harm

20   him, due to HDSP's policy of attempting to house Crip-affiliated inmates together.  (*See* Dkt.

21   195 at 4.)  Thus, plaintiff is apparently arguing that housing gang-affiliated inmates in the

22   same cell as non-affiliated inmates inherently presents a substantial risk that the non-affiliated

inmate will be assaulted, and that in this case defendants were aware of this risk of harm to

01  plaintiff and deliberately disregarded it.  (*See* Dkt. 232 at 3.)

02      Defendants contend that they are entitled to summary judgment as to this claim

03  because they were never aware that housing plaintiff with Crip-affiliated inmates, including

04  Dennis, presented any risk of harm, and therefore did not deliberately disregard this risk.  (*See*

05  Dkt. 239 at 5; Dkt. 232 at 8.)  Specifically, defendants point out that plaintiff's initial housing

06  review form, dated June 5, 2001, identified plaintiff as a Crip-affiliated gang member. (*See*

07  Dkt. 232, Ex. B.)  Based upon this review, Barron asserts that he believed that plaintiff was

08  affiliated with the Crips in 2003 and 2004.  (*See id*.; Barron Decl.)  Because Barron was also

09  unaware of any disputes or physical altercations between plaintiff and any Crip-affiliated

10  inmates at HDSP, Barron declares that "I did not have any reason to believe that he would

11  have trouble living with other Crip-affiliated inmates."  (*Id*.)  Although Sweeten declares that

12  he did not know if plaintiff was associated with any gang at HDSP, he also denies having any

13  reason to believe plaintiff had trouble living with Crip-affiliated inmates.  (*See id*.; Sweeten

14  Decl.)  The defendants point out that, with the single exception of inmate Dennis, plaintiff had

15  shared his cell with numerous Crip-affiliated and non-affiliated inmates without incident, and

16  was admittedly on friendly terms with many Crip-affiliated inmates in his building at HDSP.

17  (*See* Dkt. 232, DSUF at 3-4; Dkt. 233, Ellington Dep. at 71-78, 82-91.)

18      The Eighth Amendment imposes a duty on prison officials to provide humane

19  conditions of confinement, which includes "protect[ing] prisoners from violence at the hands

20  of other prisoners." *Farmer*, 511 U.S. at 833.  Prison officials are not liable for every injury

21  suffered by one prisoner at the hands of another, however.  *See id*. at 834.  To establish an

22  Eighth Amendment violation resulting from failure to prevent harm, a prisoner must satisfy

01  the two-part test set forth in *Farmer*, which contains both an objective and a subjective

02  component.

03       To satisfy the objective component, a plaintiff must show that "he is incarcerated

04  under conditions posing a substantial risk of serious harm." *Id.* at 834.  The Ninth Circuit has

05  also held that where the claim is based upon the failure of prison officials to protect an inmate

06  from assault, "an inmate must demonstrate that the assault was 'sufficiently serious' or that

07  the risk of assault was 'substantial'. . . ." *Kimble v. Bunnell*, 67 F.3d 307, 1995 WL 564751,

08  *1 (9th Cir. 1995) (unpublished) (quoting *Farmer*, 511 U.S. at 834).

09       To satisfy the subjective component, a plaintiff must show that prison officials acted

10  with "a sufficiently culpable state of mind," which in prison-condition cases is "one of

11  'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.  In other

12  words, "a prison official cannot be found liable under the Eighth Amendment for denying an

13  inmate humane conditions of confinement unless the official knows of and disregards an

14  excessive risk to inmate health or safety; the official must both be aware of facts from which

15  the inference could be drawn that a substantial risk of serious harm exists, and he must also

16  draw the inference." *Id.* at 837.  Although the Ninth Circuit has acknowledged that "neither

17  *Farmer* nor subsequent authorities have fleshed out at what point a risk of inmate assault

18  becomes sufficiently substantial for Eighth Amendment purposes," in this context the Ninth

19  Circuit has asserted that a prison official would violate the Eighth Amendment if he knew that

20  an inmate was acting out dangerously with cellmates or otherwise posed a threat, but housed

21  another inmate in the same cell anyway.  *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043,

22  1050-51 (9th Cir. 2002).  Moreover, the Ninth Circuit has stated that a plaintiff may "rely on

01  circumstantial evidence that the risk of assault was 'obvious.'" *Kimble*, 67 F.3d 307, 1995

02  WL 564751, *1 (citing *Farmer*, 511 U.S. at 842-43).

03       Even assuming that plaintiff was not a member of any gang at HDSP in 2003 and

04  2004, plaintiff has not satisfied the objective component of the two-part test.[8]  Specifically,

05  plaintiff has failed to provide any evidence or cite any authority (and the court is aware of

06  none) establishing that housing a non-affiliated inmate in the same cell as a gang-affiliated

07  inmate will inherently present "a substantial risk" that the non-affiliated inmate will be

08  physically assaulted or harmed.  *See Farmer*, 511 U.S. at 833-35.  Plaintiff has also failed to

09  offer any evidence that any of the specific Crip-affiliated inmates he shared a cell with at

10  HDSP, including Dennis, acted out dangerously with cellmates in the past, or otherwise

11  behaved in a manner indicating that housing them in the same cell with plaintiff would pose

12  an "obvious" threat to plaintiff's safety.  *See Ramirez-Palmer*, 301 F.3d at 1051.  Without

13  more, plaintiff's conclusory assertions regarding the "substantial danger" of housing

14  gang-affiliated and non-affiliated inmates in a cell together do not satisfy the objective

15  component of *Farmer*.  (*See* Dkt. 232 at 3.)

16       Similarly, as to the subjective component, plaintiff has failed to provide any evidence

17  to contradict defendants' statements in their declarations that they were not aware that

18

19       [8] As mentioned above, plaintiff has provided evidence that HDSP granted his administrative

20  appeal and "identified [plaintiff] as a Black non-affiliate and not a Crip" on December 6, 2005. (*See*
Dkt. 234, Ex. A.)  The Kern Valley State Prison also identified plaintiff as a non-affiliated inmate as
recently as 2009.  (*See* Dkt. 234, Ex. A.)  In addition, plaintiff provides a March 16, 2010, declaration

21  from an inmate expressing his personal belief that plaintiff is not affiliated with any gang, and
observing that plaintiff does not have any tattoos suggesting prior gang membership.  (*See* Dkt. 234 at

22  2; *id.*, Ex. A; Dkt. 233, Ellington Dep. at 52.)  Although plaintiff's evidence does not prove that he
was not affiliated with the Crips in the past, the Court notes that it helps support an inference that
plaintiff was no longer affiliated with the Crips by 2003 or 2004.

01 housing plaintiff with Crip-affiliated inmates would present a substantial risk of harm,

02 regardless of defendants' beliefs regarding plaintiff's gang affiliation status.  (*See* Dkt. 232,

03 Sweeten Decl; Barron Decl.)  It is undisputed that aside from the incident with Dennis,

04 plaintiff did not have any physical altercations or disputes during his incarceration in Facility

05 B, Building 1 at HDSP.  (*See* Dkt. 232, DSUF at 5; Dkt. 233, Ellington Dep. at 91.)  As a

06 result, plaintiff has not shown the presence of facts from which the inference could be drawn

07 that housing plaintiff in a cell with Crip-affiliated inmates presented a substantial risk that

08 plaintiff would be assaulted, or that defendants actually drew this inference and disregarded

09 the risk.  *See Farmer*, 511 U.S. at 837.

10 　　　　Accordingly, plaintiff is unable to meet his burden of demonstrating the existence of

11 material factual disputes for trial.  The Court therefore recommends that defendants' motion

12 for summary judgment on plaintiff's Eighth Amendment claim be granted.

13 　　　　4.　　*Plaintiff's Eighth Amendment Claim that Defendants Solicited Inmates,*
*Including Dennis, to Physically Harm Him*

14

15 　　　　Plaintiff asserts that "Defendant's (sic) Sweeten and Barron . . . solicited inmate's (sic)

16 to Beat, steal from, defile and generally harm Plaintiff" at HDSP in 2003 and 2004, and that

17 "inmate-Dennis did in fact assault plaintiff, and the assault was under request of Custodial

18 officer Sweeten. . . ."  (Dkt. 195 at 3-4.)  Even if the Court construes this statement as a claim

19 that defendants' conduct constituted harassment which violated plaintiff's right to be free

20 from cruel and unusual punishment under the Eighth Amendment, plaintiff has not provided

21 any evidence showing a connection between defendants and the incident during which Dennis

22 allegedly assaulted plaintiff on August 9, 2003, as required under § 1983.

REPORT AND RECOMMENDATION - 27

01        Inmates have an Eighth Amendment right to be free from "calculated harassment

02   unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).  The U.S. Supreme

03   Court has recently reiterated that the Eighth Amendment should be reserved for serious

04   incidents causing "unnecessary and wanton infliction of pain," which "are those that are

05   'totally without penological justification.'" *Hope v. Pelzer*, 536 U.S. 730, 736-37 (2002)

06   (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  As discussed above, in making this

07   determination in the context of prison conditions, we must ascertain whether the officials

08   involved acted with "deliberate indifference" to the inmates' health or safety, which can be

09   inferred from the fact that the risk of harm in a given situation is obvious.  *See Farmer v.*

10   *Brennan*, 511 U.S. 825, 842 (1994).  *See also Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

11        In addition, § 1983 also plainly requires the plaintiff to demonstrate an actual

12   connection or link between the actions of defendants and the deprivation alleged to have been

13   suffered by plaintiff.  *See Monell v. Department of Social Services*, 436 U.S. 658 (1978);

14   *Rizzo v. Goode*, 423 U.S. 362 (1976).  A person can deprive another of a constitutional right,

15   within the meaning of § 1983, " 'not only by some kind of direct personal participation in the

16   deprivation, but also by setting in motion a series of acts by others which the actor knows or

17   reasonably should know would cause others to inflict the constitutional injury.' " *Hunter*,

18   500 F.3d at 988 (quoting *Johnson*, 588 F.2d at 743-44).

19        If plaintiff had provided evidence that defendants actually solicited Dennis to

20   physically harm plaintiff, or that Dennis purposefully assaulted plaintiff at defendants' behest

21   in August 2003, this Court finds that this "punitive treatment" would almost certainly amount

22   "to gratuitous infliction of 'wanton and unnecessary' pain that [U.S. Supreme Court]

01  precedent clearly prohibits." *Pelzer*, 536 U.S. at 738.  Indeed, such conduct by defendants

02  would be "totally without penological justification."  *Id*.  Moreover, by soliciting Dennis to

03  carry out this constitutional violation on their behalf, defendants would have set in motion a

04  series of acts which they knew, or reasonably should have known, would result in Dennis

05  inflicting the constitutional injury on plaintiff.  *See Hunter*, 500 F.3d at 988.  That is not our

06  case, however.

07      Here, plaintiff has failed to provide any evidence showing a causal connection

08  between defendants and the incident in which Dennis allegedly assaulted Plaintiff.

09  Specifically, plaintiff provides no evidence (such as a declaration from Dennis, or any other

10  inmate from HDSP) to support his conclusory assertions that his documented physical

11  altercation with Dennis in August 2003 was actually an "assault" on him by Dennis, or that

12  Dennis assaulted him because "Mr. Dennis had actually succumbed" to defendants' requests

13  that Dennis harm plaintiff.  (Dkt. 233, Ellington Dep. at 92.)  Plaintiff admits that there were

14  no other witnesses to the alleged "assault," which HDSP deemed an incident of "mutual

15  combat with no serious injury where the aggressor cannot be determined."  (*Id*. at 93; Dkt.

16  195, Ex. C.)  In addition, plaintiff admits that although Dennis "may have [written a

17  declaration] for the officers . . .  He didn't write one for me."[9]  (Dkt. 233, Ellington Dep. at

18  92.)  Finally, although the declarations from Jones and Goodman, if true, assert that

19  defendants solicited each of them to harm plaintiff, it is undisputed that neither inmate ever

20  harmed or stole from him.  (*Id*. at 84-90.)

21

22

---

[9] The record before this Court does not contain a declaration from Dennis submitted by either party.

REPORT AND RECOMMENDATION - 29

01        Without more, plaintiff has not met his burden of setting forth specific facts in support

02   of his claim that defendants solicited gang-affiliated inmates at HDSP, including Dennis, to

03   harm plaintiff, thereby "setting in motion a series of acts by others" which defendants knew or

04   reasonably should have known would cause others to harm plaintiff.  *See Hunter*, 500 F.3d at

05   988.  Because plaintiff has proffered only bare allegations in support of his Eighth

06   Amendment claim that he has suffered actionable harm as a result of defendants' conduct, this

07   issue need not be tried.  *See Villiarimo*, 281 F.3d at 1061 ("[T]his court has refused to find a

08   'genuine issue' where the only evidence presented is 'uncorroborated and self-serving'

09   testimony. . . .")  I therefore recommend the Court grant defendants' motion for summary

10   judgment on this claim.

11        4.     *Defense of Qualified Immunity*

12        Defendants argue that they are entitled to qualified immunity in this § 1983 action

13   because "they are not liable for any constitutional violations."  (Dkt. 232 at 11.)  Specifically,

14   defendants claim they did not retaliate against plaintiff, and they are not liable for failing to

15   protect plaintiff from a substantial risk of harm by housing him in the same cell as Crip-

16   affiliated inmates at HDSP.  (*See id*.)  In the alternative, defendants argue that "[e]ven if this

17   court found that Sweeten and Barron violated Ellington's constitutional rights, [defendants]

18   are still entitled to qualified immunity because their actions did not violate any clearly

19   established law."  (*Id*.)

20        The defense of qualified immunity protects "government officials . . . from liability for

21   civil damages insofar as their conduct does not violate clearly established statutory or

22   constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,*

01  457 U.S. 800, 818 (1982).  A qualified immunity analysis consists of two prongs: (1) whether,

02  "[t]aken in the light most favorable to the party asserting the injury . . .  the facts alleged show

03  the [defendants'] conduct violated a constitutional right"; and (2) whether that right was

04  clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v.*

05  *Callahan*, --- U.S. ----, 129 S.Ct. 808, 818 (2009) (holding that addressing the two prongs of

06  the test in this order is often beneficial, but it is not mandatory.)  If the allegations do not

07  establish the violation of a constitutional right under the first prong of the test, "there is no

08  necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201.

09       As discussed above, plaintiff has failed to show the violation of a federal right by

10  defendants.  Under *Saucier*, it is therefore unnecessary to make further inquiries regarding

11  qualified immunity.  *See id.*

12       IV.          CONCLUSION

13       For all of the reasons discussed above, the Court recommends that defendants' motion

14  to dismiss on IFP grounds (Dkt. 230) be DENIED, and defendants' motion for summary

15  judgment on the merits (Dkt. 232) be GRANTED.  The Court further recommends that this

16  case as a whole be DISMISSED with prejudice.

17       This Report and Recommendation is submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

19  days of being served with this Report and Recommendation, any party may file written

20  objections with this Court and serve a copy on all parties.  Such a document should be

21  captioned "Objections to Magistrate Judge's Report and Recommendation."  Either party may

22  then respond to the other party's objections within fourteen (14) days of being served a copy

REPORT AND RECOMMENDATION - 31

01  of such written objections.  Failure to file objections within the specified time may waive the

02  right to appeal the District Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

03  A proposed order accompanies this Report and Recommendation.

04          DATED this 1st day of July, 2010.

05

06                                          _____

07                                          JOHN L. WEINBERG
                                            United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION - 32